MERRITT, Circuit Judge,
concurring in the judgment.
I would affirm the judgment of the district court under the theory that CUMIS successfully rescinded the 2010 Bond. Under Ohio law, general principles of the common law of contracts, and basic fairness, the Bond was voidable for fraud. Since the plaintiff sues only under the 2010 Bond, I would not reach the question of whether the plaintiff has waived its argument in favor of remand for further proceedings on the question of the availability of coverage for fraud that occurred before Calevich learned of Raguz’s dishonesty under that specific Bond.
At all relevant times, CUMIS served as St. Paul’s fidelity bond insurer. Between 2004 and 2010,, Anthony Raguz was responsible for completing St. Paul’s application to renew its fidelity bond for the coming year. Each application asked the following question:
Does any director, officer, committee member, or employee have knowledge or information of any act, error, or omission which might give rise to a claim against them or the credit union which would be covered under the Bond or any of its Endorsements or any of the Special Coverages?[1]
Raguz repeatedly answered “No” to that question, despite knowing that his fraudulent lending scheme could certainly give rise to a covered claim by St. Paul against him. Indeed, the parties agree that Ra-guz’s responses to those questions were false since at least 2004.
The NCUA discovered Raguz’s fraud after placing St. Paul into involuntary liquidation in 2010. After discovering the fraud, the NCUA filed a proof of loss with CU-MIS in the amount of $72,546,823.72. After learning of the fraud, CUMIS returned St. Paul’s premium payments on the 2010 Bond and informed the NCUA that it was rescinding the 2010 Bond on the basis of “material misrepresentations and concealment of material facts” made by Raguz on behalf of St. Paul on its application. The NCUA then sued CUMIS for a declaration of coverage specifically under the 2010 Bond.
Whether we apply the law articulated in the Restatement (Second) of the Law of Contracts or Ohio’s law of contracts, Ra-guz’s representations on St. Paul’s application for the 2010 Bond amounted to material misstatements sufficient to render the *438 Bond voidable by CUMIS.[2] The Restatement (Second) suggests that a contract is voidable by a party when that party’s assent was “induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying.” Restatement (Second) of Contracts § 164 (Am. Law Inst. 1981). A misrepresentation is material under the Restatement (Second) “if it would be likely to induce a reasonable person to manifest his assent.” Id. § 162. Similarly, a misstatement of fact by the insured is sufficient to render a policy voidable under Ohio law “if it is fraudulently made and the fact is material to the risk.”[3] Boggs, 271 N.E.2d at 858. A false statement is “fraudulently made” when the party making the statement knows of its falsity and intends that the receiving party will justifiably rely upon it. See Fifth Third Mortg. Co. v. Chi. Title Ins. Co., 758 F.Supp.2d 476, 487 (S.D. Ohio 2010) (citing Spriggs v. Martin, 115 Ohio App. 529, 182 N.E.2d 20 (1961)).
Under either test, the Bond was voidable. The record overwhelmingly supports a finding, that Raguz knew of the falsity of his response to the application’s question about his knowledge of potential claims that might be covered by the Bond. Similarly, the nature of the risk covered by the Bond and the content of the question make clear that CUMIS’s assent to the terms of the Bond as issued was given in justifiable reliance upon the truth of Raguz’s representation that he was unaware of any claims potentially covered by the Bond. Finally, it seems clear that Raguz intended for CUMIS to rely upon his misrepresentations — he certainly did not hope that CUMIS would do any further investigation before issuing the Bond, lest they stumble upon his fraudulent enterprise.
For the reasons stated above, I would hold that the 2010 Bond was voidable and that CUMIS’s letter dated September 9, 2010 was sufficient to rescind the 2010 Bond. Accordingly, I concur in the judgment affirming the district court.

. This language appears to have been updated between St. Paul's applications for the 2007 Bond and the 2008 Bond, The updated language merely broadens the question to include "volunteer[s]” and "any entity(s) which would be covered under any bond or insurance policy.” Since Raguz was an officer of the company, the later amendments are not relevant to this case.

. CUMIS urges us to adopt a federal rule of decision as a consequence of our federal question jurisdiction in this case. I express no opinion on the source of the rule of decision in this case because the result would be the same under both Ohio law and general principles of the common law of contracts.

. Ohio courts draw a distinction between insurance contracts that are "voidable” by the insurer as opposed to "void ab initio." Allstate Ins. Co. v. Boggs, 27 Ohio St.2d 216, 271 N.E.2d 855, 858 (1971). However, that distinction is only relevant when the insurer seeks to avoid its obligations under a policy after liability under the policy has accrued. Id. at 855. I agree with Judge Batchelder’s conclusion that coverage under the 2010 Bond never attached to Raguz, so liability under the Bond had not accrued when CUMIS sought to rescind the agreement.